Our next case is Velocity Patent LLC versus FCA US LLC 2019-11-14. Ms. McComas. May it please the court. Excuse me and good morning. This case comes to the court on appeal from the District Court Summary Judgment of Non-Infringement. Velocity has raised three issues in its brief. The first is the court erred in finding the process or subsystem determining limitation to be means plus function. The second issue, even applying the means plus function in limitation and limiting the claim by the algorithms disclosed in the specification, the court erred in finding non-infringement as a matter of law. And the third is the court erred in finding claims 69 and 76 through 79 invalid under 35 U.S.C. Section 305. I plan to focus my time, my short time today, with the court on the means plus function argument unless the court has specific questions on the other two points. Well, I do. Okay. You are arguing against the broadening rejection and I want to hear how you distinguish Vectra. Okay. Your Honor, Vectra was in a very specific context of a reissue. Here, with respect to claims 69, 76, and 79, they were added in the context of a re-examination. In what 305 tells us, and it was actually quoted in FCA's brief, in any re-examination proceeding under this section 305, Vectra proposed any amendment to his patent and a new claim, or claims thereto, in order to distinguish the invention as claimed from the prior art cited under the provision of section 301. Doesn't the reissue patent and the re-exam statute have the same provision that you're not allowed to broaden the claims during those proceedings? They do. They do. So, substantively, that seems like the same rule would apply. But, temporally, here you have something different. You have suggesting that you can broaden claims in a re-exam? No. No. I'm suggesting that it wasn't broadened because it was done simultaneously. So, the idea that they're wiped out for all purposes shouldn't apply in the context of a 305 re-exam proceeding where it's done in the same proceeding, but certainly not when it's done at exactly the same time and it's expressed on the face. Vectra's reasoning for applying its ruling that it would be wiped out for all purposes and not applied in the reissue simply doesn't apply here. Here they were a year, I mean in Vectra, they were a year later. And the consequence was that the public had had the benefit. In other words, they were truly broadened? Correct. And you're saying here they were not broadened? Right. Here it would be a... Because the disclaimer had occurred only later. When these claims were added, they were not broadening because there then existed already broader claims? That's right, Your Honor. That's right. What happened was, at the same time we, Velocity proposes disclaiming 31 and 32, they add these same claims that specifically recapture that same subject matter, but narrower. So the intent is clear. So all of this was in the same proceeding as Judge Chin was suggesting? That's right. And your point is that when during the proceeding it occurred matters? I think under Vectra, and you asked me to distinguish Vectra and that's kind of what we have to go on here case law wise, that that was really the purpose of protecting the public. And here you don't have the same issue. Because here, if you look at what we had in re-exam going in, we had something narrower coming out of it. I'm just trying to remember Vectra. I don't recall it saying anything about a particular sensitivity as to the timing of when the broadened claim was introduced and when the original claims were disclaimed. That's right. And as I recall, Vectra seemed to say something like, oh well, once you disclaimed those claims, it's just pretend like it never existed. And that's how we're going to treat disclaimed claims. So you go back to square one, as if the original patent never issued with those claims. Now let's see whether the claims you wish to introduce in your issue are in fact broader compared to the original patent without those disclaimed claims. Am I missing something from Vectra? No, and I think I may have misled you in the way I answered your question. Vectra has a policy statement as to why they reached that conclusion. I think you're right, and that's what Vectra says. The problem with Vectra is it's applying that because it found there was this time period where the public had had an expectation that that subject matter had not been claimed. And that reasoning doesn't apply in this case. And if you look at Rembrandt and Gwinn, we have other cases. They're not directly on point, but they clearly say that the Vectra analysis doesn't apply exclusively, that they look to that reasoning and that policy purpose to apply it differently in different contexts. Here, this is the poster child for applying it differently because it literally was using Rule 305 for its purpose, which was you can choose to either amend that claim or you can make it a new claim with the same subject matter, only never broader. And that's exactly what happened here. Does that answer your question, Judge Lurie? I think it does. On the means plus function issue, the independent claims of the 781 patent don't use the word means. They use the term processor subsystem, and specifically processor subsystem determining is what we're talking about here. Even after Williamson, the claim, absent the use of the term means in the claim. Williamson adjusted the presumption. It's not as strong as it was, but it's still there. So it's still FCA's burden. Apple versus Motorola tells us that if a limitation recites a known term or a generic term with sufficient structural meaning, or recites either a known or generic term with a sufficient description of its operation, the presumption against means plus function claiming remains intact. My understanding of Williamson is if a claim limitation recites a function without sufficient structure for performing that function, and the defendant demonstrates that, then the presumption is overcome, and then the claim limitation should be treated as a 112-6 claim, a 112-F claim. So then the inquiry then is whether or not processor subsystem is sufficient structure for performing the function of determining, based on various inputs, whether to activate some notification circuit. Is that the crux of the issue? Right. The question is whether processor subsystem is either on its face so structural you never get there, or is sufficiently structural that it performs the function? Well, that's an interesting way you put that. It gets to the heart of this case, I think, which is you added an extra out for yourself, which is, is processing subsystem something by itself connotes known structure? And if so, then you stay away from 112-6. And then alternatively, we ask, is it sufficient structure for performing the actual function that's recited in the claim limitation? Now, I think there's an argument for that second piece, the last one, that a generic processor wouldn't alone be enough to perform these particularized functions that are recited throughout your independent claims. On the other hand, processor subsystem sounds a lot like processor, which is a definite class of structures. And so if that's all you need to do in this limitation, which recites a processing subsystem for doing some particularized function, then that's good enough. But that's really the question that we have to figure out. And we've already ruled several times in a related claim construction exercise, that is, after you've determined that a claim limitation falls within 112-F and is a means plus a function limitation, then we must go to the specification and look for the corresponding structure. And we've said time and again that when it comes to some particularized function in the claim structure, you also have to do an algorithm. And that's because the algorithm is actually the brains that performs the function, and it relies on the brawn of the generic processor to undertake those operations to accomplish the function. So the question is, if we've said, and it's not an if, well, we have said, when it comes to that inquiry for 112-F claim construction, that you have to have an algorithm disclosed in order to have sufficient structure for performing the claim function, why would we have a different requirement when your claim limitation really says processor for doing that same function in the claim? So Apple answers that question for us. Apple says it's a two-part test, and I think you said it right, that it's only after you determine that there's means plus function that you look to the specification to determine whether there's sufficient structure. And that's really where we are. We haven't gotten to that second step, but the district court applied junk to it. And that is the problem here, that you have to make one of the analyses to determine whether or not there's structure. And you're right, Williamson says you can get there two ways. One is, it's not an on, right? And the other is, the claim recites function without reciting sufficient structure. I think it's true that either one of those could put us into a means plus function that would then trigger the second level of cases. But what Apple says is you must look at that first step first. And we agree with you, processor subsystem on its face has structure. What Apple says to get that second one, the way you look at it, is you look at whether the processor subsystem has structure within the claim. Does it have inputs and outputs? And specifically, you can go back to Linear Tech, which applied the objectives and operations test. And I think that's very effective here. You can look, let's take claim 17, it has the most to work with. And it specifically has an objective. The objective there is to determine excessive fuel speed and the up shift notification for excessive speed. I mean excessive fuel and excessive speed, I'm sorry, those are your objectives. And the operation, how you get there, is in the processor subsystem determining using all of the sensors that are in that claim when to activate the proximity alarm circuit. As I understand Apple, and you're right, that Apple and a few other cases, they show sensitivity towards trying to figure out are there other words in the claim limitation that help understand what the limitation is, not really just only what the limitation does. And if there's enough in there that tells you how the function is being achieved, then you're going to not fall within means plus function. That's correct. And so as I understood the way you argued and your expert argued, it seemed to just focus on whether there's any structure, any inputs, any outputs, any connections that are in the claim limitation. And if so, then that's enough. And I think our case law requires more. It needs to have those inputs, outputs, and connections to other devices that reveal, therefore, how the function is being achieved that informs us exactly what is inside the black box. Here it would be a processor subsystem. And I didn't see you taking that extra step in making that kind of an argument. A couple of things there. Here it does show you the how. It says the how is by reading the sensors. And in different claims it reads that differently. Sometimes it's using the memory subsystem to get there and different triggers that come from those claims. Sometimes it's specifically directly to the sensors. That is the how. There are a couple of issues here. One is, Judge Tenney noted several times, Velocity argued, Velocity pointed to, it constantly goes back to who has the burden and it remains FCA's burden. And it's hard to remember that in this context, especially since we had the only expert. But that is a little bit telling. Counselor, you're almost through your rebuttal time. You wanted to save some. We'll give you two minutes for rebuttal. Thank you. Ms. Woodworth. Good morning. May it please the court. The court should affirm the district court judgment here. It's a pretty common practice to use a claim limitation that starts with processor 4, isn't it? Or game controller 4. It is. And that's the classic syntax under which we understand that it's invoking 112.6. So then would all those claims, in your view, are means plus function limitations? So you have to do the two steps that we've been talking about in terms of Williamson. And so it depends on, first, is there a definite understood structure? And second, is that structure sufficient for performing the function that's recited thereafter? So if here, it recited simply processor subsystem for receiving data from the sensors and stopped right there, that would be a different inquiry than what we have here, which is a more complicated determining step. A step of determining whether or not you're going to activate a fuel over injection notification circuit. There's no question that a general processor does not have that capability standing alone. You're talking about Inright-Katz and there's an entire line. Inright-Katz is a very good example because it actually has processing means. As does the Brown versus Baylor health care system. Inright-Katz, just to be clear, wasn't a case about whether it's 112.6. It actually used the words means 4 and everyone agreed it was 112.6, correct? Everyone did agree that it was 112.6. There was one example where it was processing means 4 rather than means for processing, but that's correct. The court was not looking at whether it was 112.6. In the Brown versus Baylor health care case... But that's what I'm worried about in terms of looking at 112.6. What I'm worried about is using the tail to wag the dog. The Katz decision absolutely helps you in that it says processor means 4 needs an algorithm to be disclosed. But that's because it was in the context of we're already in 112. So we have a million cases that make it clear that the patentee has a higher disclosure requirement once he has elected to use 112. Atmel and others call it the quid pro quo for using 112. You have to disclose more. It doesn't matter if a skilled artisan would know what kind of algorithm to use. You have to disclose it anyway because that's the quid pro quo for you getting to use means 4. So what I'm worried about is where Judge Bryson was in the Katz opinion was in a place where the patentee admittedly had to disclose more. He could not rely on what a skilled artisan would know. The spec had to actually list it. But if we use that to decide whether it's 112.6, then we're actually requiring the more in the spec before we ever figured out whether the patentee in fact wanted to avail itself of 112.6. But there's no question that the tests are very similar. Williamson, which this court held in bank, asks whether or not there's sufficient structure for performing whatever the recited functions are. But when you're thinking about whether it should be 112.6, isn't that whether there's sufficient structure viewed through an ordinary artisan's eyes with the knowledge an ordinary artisan has? I believe that that's correct. I believe that the second part is also looking through the person of ordinary skill in the art in his eyes as well. What second part? The second step once you've decided that you're 112.6 and you're looking for corresponding structure. No, it's not. You can't use what the ordinary artisan knows once it's 112.6. The spec has to disclose it. We have case after case that says even if a skilled artisan would have known what structures could perform this, not good enough. The spec has to disclose it. But what I'm saying is I think in assessing 112, whether something is 112.6, I think we can look at said process or subsystem determining and say, would a skilled artisan have known that a processor would do this, a physically definite structure, and would a skilled artisan have known exactly what type of algorithm or subroutine or software would be required? I asked one of the Velocities experts specifically that. What type of algorithm would be required here? He testified, and this is at APPX 3688. They asked what type of algorithm would be required. And what he said is there are a number of ways to implement that claim structure. Implement the claim structure that would vary based on a number of factors, such as the vehicle limitation. And this is what Judge Durkin relied on to say this is exactly what functional claiming is. He's saying what the black box, what we put in the black box, what the something else is besides the processor, depends entirely on what the function is that I've written. Here we don't just have activating fuel over injection notification circuits. We're also activating upshift and downshift notifications. Counselor, I want to ask you about broadening. Why shouldn't we reverse the broadening rejection on the basis that at the time claims 69, et cetera, were added, there was no broadening? Did the disclaimer had occurred later? Because there is a difference, and I heard the discussion here between canceling or amending claims and disclaiming them. It's 37 CFR 1.530. And again, this is cited in the district court's opinion. That says that amending and canceling claims during a re-examination, they do not have effect until you have the re-examination certificate. So there is a difference in procedure if you're trying to get a claim scope by amendment than there is if you're trying to get it by disclaimer. The disclaimer takes place immediately. So immediately in December of 2014, those claims were no longer in the patent. Whereas if you were amending or if you are canceling, those claims remain part of the broadening analysis because they remain part of the original patent until the day that... So there are two rules. An amendment takes place immediately, but an amendment doesn't take place until the That's exactly right. Well, it actually, if you look at the MPEP, it suggests disclaimers are not meant to be used in this way. Disclaimers are meant to rid the world of claims that have validity problems. And they are not meant to be used in order to add or amend other claims. That MPEP section is cited in our brief. So this certainly was a strange procedure that Velocity tried to use. And if you look at the reason that they were trying to do it, it actually all makes sense. At the time that the re-examination was filed, Mercedes was another defendant that they had sued in the case. And Mercedes was trying desperately to file IPRs rather than go the ex parte re-examination route. So Mercedes first filed an IPR on claims 31 and 32 of the original patent. Velocity then amended those claims and was trying to change them during the re-examination process. The IPR you mean? No, the IPR was not yet instituted. Oh, this is the re-examination. Exactly. So the sequence was re-examination first, then Mercedes' first IPR. Then Velocity amended its claims. So Mercedes tried to file a second IPR on the amended re-exam claims. And at that point, Mercedes asked the PTO to merge all of these proceedings so that it could participate rather than having an ex parte procedure that took place with amendments under the re-examination rules. And at that point, when Mercedes asked for the merging of these so that it could participate, the board declared that it would have a status conference. And that's when Velocity decided, oh, I'm going to statutorily disclaim them. That mooted both of the IPRs. So by statutorily disclaiming they could get dismissal of the IPRs, Mercedes would not be participating. Velocity would not be having to amend its claims under the IPR statutes, but rather could do an ex parte and a re-exam. And that occurs immediately, as Your Honor suggested. So just as in Vectra, by the end of the re-examination, the disclaimer had taken place. We can no longer count them. So when we get to the end of the proceeding and we're doing a comparison, have they obtained claims that are broader in scope than the original patent? The answer is exactly the same here as it was in Vectra. So the timing is really inconsequential. These statutory disclaimers, they don't have to occur inside of a reissue or re-exam, right? You can file it at any time? That's exactly right. The most often case is that they actually occur as part of a litigation where there's no ongoing patent proceeding. Judge Moore, had I fully answered your question with respect to the means plus function? No. Okay, well, let's return there. The point that I was trying to make was that, as Judge Chen pointed out, in order to have sufficient structure to perform a step like determining whether or not to activate a FONC, we have to know more than the inputs. The inputs don't get us there. The inputs do not make the decision. The inputs do not tell us when to make that activation, which is exactly what's required of the claim. Determine when. You're talking, but the problem is we have a lot, lot, lot of case law out there. In fact, I have a chart here of every case we've ever decided. In one column is everything that was found to amount to sufficient structure. In the other column is everything that was found to amount to means plus function language, even though the word means for were not used. We should compare charts. I could run through all of them with you, but yours looks a lot more like the sufficient structure column than it does the means for column. And what you're saying about what you would like to see in the claim itself before it could avoid 112.6 doesn't seem consistent, for example, with digital detector for receiving and transmission and detecting said predetermined signal. It doesn't tell you how. Digital detector doesn't tell you how. We found that was sufficient structure. And that's a post-Williamson case. There was no issue there. So my problem is I've gone through all of these, and I understand the logic of your argument pulling together Katz and Williamson. But what concerns me is you're using the standard and applying it to the patentee, the standard for what's required once 112.6 is determined. And I feel that that's a higher burden on the patentee, that enablement doesn't require patentees to necessarily disclose algorithms. Now 112.6 might, but enablement doesn't. And so I'm not sure I should decide processor subsystem isn't enough all by itself for enablement purposes because a skilled artist would know how to do this. But that's exactly what we asked. Again, going back to 3688, that's exactly what we asked the expert here. Is a processor enough? Does the processor have to be programmed? Yes, to work. Any microprocessor has to be programmed in that I'm talking about a microprocessor. If you have a microprocessor that's not programmed, it's not going to work. So we know that it has to be programmed. But that argument would lead to a very unpalatable conclusion for me, which is any time there is a function that implicates software, that has to be 112.6. You don't have a choice. It has to be 112.6. I think that for receiving, storing, those types of, as Enright Katz said, those types of general computer terms or functions, those can be performed without an algorithm. So there the hardware is sufficient structure. But where you do have more complicated... But that's a test that only applies once you're in 112.6. I know, but that's exactly the balance, right? The balance is if you're trying to claim the software in terms of the function that it performs, that's exactly the balance that Williamson was talking about. Okay, then how could our court in the Apple case have said, program that can operate the movement of a pointer over a screen is sufficient structure and not implicating 112.6? I think, again, I think looking at any of the pre-Williamson cases is difficult in terms of... It's not. It was decided in 2018. Oh, the second Apple case. I apologize. I don't know that I have that function that was in front of us. Well, I'll read it to you. Program that can operate the movement of the pointer over a screen. I believe somewhere within that opinion... Within the word program, there's sufficient structure that explains exactly how it's going to operate the movement? Well, I do believe that the case itself, the holding there, what the judges found was that it did provide the how, and in that way it's distinguishable. Here we have Judge Durkin, who looked at the intrinsic and extrinsic evidence, and he found, I mean, this is a fact-finding, he found that there is not sufficient structure. No, it's not a fact-finding. Deciding whether something is 112.6 or not is not a fact-finding. That's a question of law. In Williamson, this case said that there were underlying facts that can be part of that analysis, just as it is in TEVA and any type of claim construction. Have we ever held that this is a fact-finding? I believe... I don't know. I don't know if you expressly have, but certainly in Williamson you said that there were underlying facts. So I think sufficiency of structure and whether or not something discloses sufficient structure does include factual findings in terms of what is the function, what does it require in order to be sufficiently disclosed how to perform that function. And Judge Durkin here found that there was not sufficiency, particularly relying on the testimony that I've already cited, and what he said was that looking at this, it's very clear that what you're doing is functional claiming. What you're doing is exactly what 112.6 is focused on. If you've got a claim that you're trying to define by the scope of what the function is, you are bound to the strictures and the balance set forth by that statute. I guess if this claim doesn't fall within 112.6, then the claim limitation covers any processor programmed in any particular manner to perform this function. That's exactly right, and that's the point that I'm trying to make. And then when I think about the digital detector case that Judge Moore was referring to earlier, essentially that claim is any digital detector, no matter how it's designed, to perform that recited function there. And in those types of cases, digital detector is an example, we allow those to escape the strictures of 112.f. But for these processor 4 claims that invoke some need for programming to perform the function, I guess you're saying we need to go and throw those into 112.f. Well, certainly I think that that's what the definiteness case law suggests, that there's not sufficient structure. But I don't know that the other cases are not consistent with that. My understanding is that all of the other cases that have analyzed whether or not there's sufficient structure have found that there is something more. There is enough there, including the Apple case. I think the MTD products case that we cited in a Rule 28 letter to this court is another good example where you have a lot of structural language. The claim term at issue was a mechanical control assembly. It was very clear what the inputs were. It was very clear what that assembly was connected to. But what wasn't clear was how it was going to actuate. Thank you, counsel. Thank you, your honor. Your time has more than expired. Ms. McComas. Before we get into means plus function, which I'm very interested in, can you explain why you didn't merely cancel claims 31 and 32 and why the patent owner elected to disclaim them? Excuse me, your honor. Yes. I mean, I think procedurally, FCA's counsel described it correctly, that there's litigation going on and there's an IPR going on at the same time. So the decision was made to drop those in response to moving along. And I think they said that expressly in the papers why they were doing it. And that was so that they could move forward with the district court litigation, which had been saved for a very long time. My question is the choice of disclaimer versus the other available choice, which was to simply cancel the claims. Or amend. I don't know. I mean, I don't have anything in the record to answer that question precisely. I can tell you the amended and new claims occurred November 3rd. The disclaimer didn't occur until December 10th. So it was much later temporally. And if you go back to what we're saying, Vectra is saying the policy reason for the wiping out the claims as if they never existed, it's public notice. And here, the public at all times was on notice of what the claim was and what the intent was. The statute 305 allows either. And it doesn't qualify one over the other. And the MPE site that they have in their brief says, it's not talking about it in the context of 305. In fact, it says there's not really a mechanism for this. Therefore, we don't do it. So it's just simply not in the same context. And I'm running out of time quickly. So I want to hit some of those high points on the means plus function if we can. We'll give you an extra minute. Okay. Judge Chen, I think what you're struggling with, what we're all struggling with, is if it's not a means plus function claim, there may be other problems with the claim. None of those are before us today. Apple alludes to this, that there may be an indefinite issue or enablement issue. I'm not saying that exists here. In fact, I'm saying it's not. But that's the struggle. And you can't interpose those principles on the context of determining whether a means plus function claim exists in the first instance. From an evidentiary standpoint, processor subsystem is a known meaning in the computer industry. We've established that. It's a recognized class of structures. And all of the case law says that's all we have to have. It doesn't have to be a specified structure for it to satisfy the prong of determining whether it exists. Let's just accept as a given that no off-the-shelf processor could perform these recited functions alone without programming, without some specialized programming. Okay. Then what do we do? Because if the thing that is needed to perform the function is actually made up of two things, the processor and the programming, then is it enough to just recite one of those two things in the claim limitation to count as sufficient structure when you're claiming a function? Yes. I think it is under the case law. The problem here is, like I said— Well, I don't know if the case law is so clear because the case law that we have so far, we have examples where the claim term in question is not definite. It's a nonce word. It's a unit. It's a mechanism. It's something like that. It doesn't really mean anything. It's a black box. Then there's the other kinds of claim terms where we've concluded this is something that people of skill in the art understand. It refers to a known class of structures to perform this particular function, so we're not concerned. And here we have something different where we have what, just for sake of argument, is an incomplete type of structure, and that is the reference to the processor, but no explanation as to how that processor is undertaking the operations to achieve the function. So that's why this case isn't necessarily bound up by anything we've done so far, I don't think. I think, if I'm hearing you right, what you're really struggling with from seeing a fair number of how computers work is the same desire that FCA is trying to interpose, which is the need for the absolute algorithm that tells you how to do it. And I think we don't have to have that. I think that's what the case law is telling us, and I appreciate that struggle. But I think these claims, as they're written, they give you the substance of the how. They tell you what they're looking to to make the determination. They're looking to the memory subsystem, in some instances. They're looking to the speed. They're telling you all the data they're taking, and if you look at the limitation we're actually talking about here, the processor subsystem determining, what it determines is when to activate the notifications. How it does that is based upon the data it's receiving from the sensors, the memory subsystem, and the other places. Thank you, Counsel. Thank you, Your Honor. I think you've had a good opportunity. Case is submitted.